UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RASHAD BABBS,<br><br>                Petitioner,<br><br>v.<br><br>SCOTT FRAKES,<br><br>                Respondent. | CASE NO. C10-5807BHS/JRC<br><br>REPORT AND RECOMMENDATION<br><br>Noted for July 15, 2011 |

This petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and Local Magistrate Judge Rules MJR3 and MJR4. Through counsel, petitioner is challenging his Pierce County convictions for one count of first degree murder, one count of attempted first degree murder. The sentences run consecutively, and each carries with it a 60-month firearm enhancement. In total, he was sentenced to 734 months. (ECF No. 1 page 1).

Neither of the two grounds for relief raised by Mr. Babbs meets the standards for granting habeas corpus relief as set forth in 28 U.S.C. 2254 (d). Petitioner's challenge to the prosecutor's decision to strike an African-American juror fails because petitioner has not come forward with clear and convincing evidence that the state court's fact finding was wrong.

Petitioner's challenge to the admission of statements made by his non-testifying co-defendant fails, as well, because the court redacted the defendant's identity from the statements through use of a neutral pronoun and the decision of the state court affirming the conviction does not violate clearly established federal law.

Therefore, the court recommends that the petition be DENIED, but that a certificate of appealability issue as to the second ground for relief.

## FACTS

The Washington State Court of Appeals summarized the facts as follows:

> Jonathan Webber and his wife, Chica, were walking from a friend's house at about 11:00 p.m. on March 22, 2001. Two men approached them and asked them about drugs. One man wore a beige coat with a black striped hood and the other wore a black leather jacket with a hood. Jonathan [footnote omitted] got a better look at Hicks, the man in beige.
>
> The Webbers kept walking, telling the men that they did not have any drugs. The men followed the Webbers and told them several times to empty their pockets. Jonathan stopped on a street corner and told the men that he was broke and that he had no money. Hicks told Jonathan to empty his pockets or he was going to die.
>
> Jonathan noticed Hicks was holding a revolver, so he grabbed Chica's hand and started to cut across the street. The Webbers had only gone a few feet when Hicks and Babbs started shooting at them. The Webbers fell to the ground. Chica was killed and Jonathan sustained wounds in his leg, wrist, and the left side of his back. Jonathan later testified that he believed the gunshots came from more than one gun because one gun was louder than the other. Neither assailant approached the Webbers when they were on the ground or took anything from them.
>
> Wayne Washington was sitting on the couch with his wife watching TV when they heard the gunshots outside their house. Washington, whose grandfather used to take him to the firing range, testified that he heard shots fired from two different weapons. He said the first gunshots he heard sounded like they came from a larger, heavier gun. Right after the shots from the larger gun, he heard the shots from a smaller caliber gun, which he thought was a .22. He thought he heard a total of about seven shots from both guns. He looked out the window once the shooting had stopped but he did not see the shooters.

After the shooting, the assailants ran off through an alley. Police officers surrounded the area and brought in a K-9 unit to search. The search recovered a revolver, a brown glove, a black leather jacket, a knit stocking cap, and a sweatshirt. This clothing was similar to clothing the suspects were wearing earlier in the evening. DNA on the sweatshirt was consistent with Babbs' DNA.

Inside the black leather jacket was a set of keys belonging to Babbs' sister, Collette Babbs. The jacket's pocket also contained a receipt with Alana Stubblefield's phone number handwritten on the back. Stubblefield is Babbs' cousin. She testified that she used to see Babbs all the time and every time she saw him she would give him her phone number. Lenard Masten's name was on the receipt. Stubblefield testified that she used to date Masten.

Dana Duncan was a teenager sleeping in her room at her mother's house when a man started pounding on her window the night of the shooting. He convinced her that he knew her brother and she eventually let him in. Duncan had never seen the man before. He was wearing a T-shirt, but no jacket.

Duncan agreed to give the man a ride and she let him off near the Tacoma Mall. Shortly after she arrived home, Duncan received a call from the man to thank her. Phone records showed that the call came from the cell phone of Toni Miles, Babbs' brother's girlfriend. Although she did not recognize Babbs at the first trial, Duncan came to believe that he was the man who came to her window.

Jonathan was able to describe Hicks to the police sketch artist but he did not get a good enough look at Babbs to describe him. Police showed Jonathan photo montages containing pictures of Hicks and Babbs. Jonathan was not able to identify Babbs from the montage, but he said Hicks looked most like the man he saw even though he could not be sure.

Chica's autopsy revealed that she was shot three times in the head. Fragments from all three bullets were recovered during the autopsy. Two bullets were .22 caliber and one was a larger caliber. The .22 caliber bullets were too badly damaged to determine if they came from the revolver recovered during the search. The larger bullet probably came from a 9 mm Ruger semiautomatic pistol.

(ECF No. 10, Exhibit 2, pages 2 to 4). Mr. Hicks was subsequently arrested on unrelated drug charges. He gave incriminating statements about himself and Mr. Babbs concerning the shooting of the Webbers. In pretrial motions the trial court found the statements admissible in a redacted form where Mr. Babbs name was replaced with the pronoun, the "other guy" (ECF No. 1, page

8). Petitioner challenges the propriety of the admission of these statements as one of his grounds for relief.

**PROCEDURAL HISTORY**

The following procedural history is taken from the Washington Court of Appeals decision affirming the convictions (ECF No. 10, Exhibit 2). The state charged Babbs and Hicks with aggravated first degree murder and, in the alternative, first degree murder and first degree felony murder, with first or second degree robbery as the predicate felony. The court instructed the jury on the lesser included offenses of second degree murder and second degree manslaughter.

Babbs and Hicks were also charged with the attempted murder of Jonathan Webber and unlawful possession of a firearm. Mr. Babbs pled guilty to the firearm charge before trial. He does not raise any issues concerning this conviction in his petition.

The jury convicted both defendants of first degree felony murder for the death of Chica Webber. Mr. Hicks was also convicted of unlawful possession of a firearm. The jury could not reach a verdict on the attempted murder charge of Jonathan Webber and the court declared a mistrial as to that charge. A second trial was held on the attempted murder charge. When the prosecutor used a peremptory challenge to remove the last African-American juror, both counsel for Babbs and Hicks objected. Counsel claimed that the prosecutor had not asked this juror any questions; therefore, the reason for the challenge was her race. The Washington State Supreme Court noted, however, that the prosecutor actually did ask a few questions of this juror (ECF No. 10, Exhibit 3, page 7 fn4, Exhibit 48, page 394).

There is a three prong test for determining if a prosecutor has improperly excused a juror based on race. Batson v. Kentucky, 476 U.S. 79 (1986). First, the defendant must make a prima

REPORT AND
RECOMMENDATION - 4

facie showing of discrimination. If defendant makes this showing, then the burden shifts to the prosecutor to show non discriminatory reasons for the removal of the juror. Finally, the trial court must determine whether or not the defendant has established "purposeful discrimination." Batson,476 U.S. 79, 94-99 (1986).

In this case, the trial court heard argument and stated that "out of an abundance of caution, I find a prima facie case [of discrimination]." (ECF No. 10, Exhibit 3, page 7). The prosecutor then set forth his reasons for the challenge. The prosecutor offered several reasons:

> [The juror] has a master's in education. Whether it's science or not, people who are educators tend to be non-state type jurors that tend to be more forgiving, nurturing type, that necessarily aren't [sic]going to look for reasons to excuse behavior. She also happens to be a social worker, which is another red flag for a prosecutor.
>
> ….
>
> Further, [the juror] also indicated that somebody in her family, either a friend or relative, has been arrested and served time.

(ECF No. 10, Exhibit 3, page 7). The court commented that that the prosecutor must have "read the same version of the jury selection book that's been on my shelf for years." When reminded that the final step required the court to make a determination on the record, the court stated "Okay, the *Batson* challenge is denied." (ECF No. 10, Exhibit 3, pages 7-8).

Petitioner filed an appeal and the Washington State Court of Appeals affirmed the convictions (ECF No. 10, Exhibit 2). Petitioner moved for discretionary review in the Washington State Supreme Court. The court granted review, but ultimately, affirmed the convictions (ECF No. 10, Exhibit 3). Petitioner filed a motion for a writ of certiorari and that motion was also denied. Babbs v. Washington, __ U.S. __, 129 S. Ct. 278 (2009).

Petitioner filed a personal restraint petition in the Washington State Supreme Court and the petition was transferred to the Washington State Court of Appeals (ECF No. 10 Exhibits 13

REPORT AND
RECOMMENDATION - 5

and 16). The petition was denied (ECF No. 10. Exhibit 17). Petitioner filed a motion for discretionary review (ECF No. 10, Exhibit 18). The Washington State Supreme Court denied review (ECF No. 10, Exhibit 19). This action followed (ECF No. 1).

Petitioner presents this court with two grounds for relief:

1. In upholding the denial of Babbs' *Batson* claim, the Washington Supreme Court unreasonably applied clearly established federal law; to wit, the United States Supreme Court's decisions in *Miller-El v. Dretke*, 545 U.S. 231 (2005) and *Snyder v. Louisiana*, 552 U.S. 472 (2008). The state court's decision was also based on an unreasonable determination of the facts in light of the evidence presented in state court.

2. In denying Babbs' *Bruton* claim, the Washington courts unreasonably applied clearly established federal law; to wit, *Bruton v. United States*, 391 U.S. 123 (1968) and *Gray v. Maryland*, 523 U.S. 185 (1998).

Respondent concedes that these two grounds for relief are exhausted (ECF No. 9, page 7).

## EVIDENTIARY HEARING NOT REQUIRED

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing in this court shall not be held unless the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims are based on legal arguments, not disputed facts. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish

that no rational fact finder would have found him guilty of the crime. Therefore, this court concludes that there is no reason to conduct an evidentiary hearing.

## STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for mere errors of state law. Estelle v. McGuire, 502 U.S. 62 (1991); Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984);

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## DISCUSSION

A. <u>Dismissal of the last African-American Juror from the panel during the second trial.</u>

The trial court identified and applied the three prong test articulated by the Supreme Court for determining if a juror has been dismissed based on racial discrimination. Baston v. Kentucky, 476 U.S. 79 (1986). Counsel for petitioner argues the Washington Supreme Court

REPORT AND
RECOMMENDATION - 7

unreasonably applied the federal law as set forth in Miller-El v. Dretke, 545 U.S. 231 (2005), and Snyder v. Louisiana, 552 U.S. 472 (2008). Petitioner also argues the decision was unreasonable in light of the evidence presented (ECF No. 1).

Both Miller-El and Snyder are distinguishable from Mr. Babbs' case. In Miller-El the prosecution twice "shuffled" the order of the prospective jurors after a large number of African-Americans were seated in the first area of prospective jurors. After the court denied a motion for a third jury shuffle, the prosecutor used ten peremptory challenges to excuse ten of the eleven remaining black jurors. The reasons offered by the prosecution for these challenges were clearly pretextual, as the prosecution did not strike white prospective jurors with the same characteristics. The Supreme Court held that to overturn the state court findings, the burden was on the petitioner to come forward with clear and convincing evidence that showed the state court's fact finding wrong. Miller–El, 545 U.S. at 240. The facts in Miller-El are far more persuasive and compelling than those offered by petitioner today. While some jurors left on the panel may have a trait in common with the juror removed; respondent has not shown any of them share all the reasons given by the prosecutor for removing the African-American juror. The evidence offered today is far less compelling than that offered to show racial bias in Miller-El.

In Snyder v. Louisiana, 552 U.S. 472 (2008), the Supreme Court found the reasons given for striking an African-American juror pretextual. The record did not support the prosecutor's stated reason, that the juror appeared nervous during questioning. The juror was not struck until the next day. Further, the other reasons given, that the juror did not want to miss schooling and might vote to acquit to shorten the proceedings, was pretextual given that the court had contacted the school and accommodations had been made for the student to make up the time missed. Snyder, 552 U.S. at 479-82 (2008). Here, the prosecutor proffered three race-neutral reasons for

REPORT AND
RECOMMENDATION - 8

the removal of the juror: (1) she had a masters degree in education, and, according to the prosecutor, "educators tend to be non-state type jurors that tend to be more forgiving, nurturing types;" (2) she was a social worker, "which is another red flag for a prosecutor;" and (3) "somebody in her family, either a friend or relative, has been arrested and served time." (ECF No. 1, page 4). The petitioner notes that one juror left on the jury also worked in public service, and that four non-African-American jurors had family members or friends who had been convicted of crimes. Petitioner does not show that any juror left on the panel had all the traits the prosecutor listed as reasons for removal of the juror. The reasons provided by the prosecutor, regardless of their merit, are non-pretextual and, therefore, are distinguishable from Snyder. The petitioner and has not come forward with clear and convincing evidence showing the findings of the state court were error. This ground for relief is without merit.

  B.  <u>Admission of a co-defendant's incriminating statements</u>.

  Mr. Babbs' co-defendant, Mr. Hicks, was arrested on unrelated charges. After being informed of his rights, Mr. Hicks gave statements that incriminated himself and Mr. Babbs in the shooting of the Webbers (ECF No. 10, Exhibit 2, pages 4 to 7). The court ruled that the statements were admissible after Mr. Babbs' name was redacted and the pronoun "other guy" was inserted (ECF No. 1, page 8).

  Petitioner argues that the admission of the statements violated his Sixth Amendment right to confront witnesses against him (ECF No. 1, page 17 and 18). Petitioner argues that the decision of the state court unreasonably applied the federal law as set forth in <u>Bruton v. United States</u>, 391 U.S. 123 (1968) and <u>Gray v. Maryland</u>, 523 U.S. 185 (1998).

REPORT AND
RECOMMENDATION - 9

In Bruton, a co-defendant, Mr. Evans, gave a statement implicating both of them. The trial court admitted the statement without redaction, but with a jury instruction to consider the evidence only against Mr. Evans. The Court stated :

> Here the introduction of Evans' confession posed a substantial threat to petitioner's right to confront the witnesses against him, and this is a hazard we cannot ignore. Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all.

Bruton, 391 U.S. at 137.

Nineteen years later, the Court limited the holding in Bruton. In Richardson v. Marsh, 481 U.S. 200 (1987) the Court allowed a redacted statement as evidence against the person who gave the statement. The redaction removed all reference to the other defendant. Richardson, 481 U.S. at 203. In a footnote the Court stated "[w]e express no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." Richardson, 481 U.S. at 211. Thus, the Court left open the question of whether a redacted confession using a neutral pronoun for the non-testifying defendant was admissible in a joint trial.

Eleven years later, in Gray v. Maryland, 523 U.S. 185 (1998), the Court granted habeas relief. The prosecution "simply replaced the non-confessing defendant's name with a kind of symbol, namely, the word 'deleted' or a blank space set off by commas." Gray v. Maryland, 523 U.S. at 192 (1998). The Court stated:

> For one thing, a jury will often react similarly to an unredacted confession and a confession redacted in this way, for the jury will often realize that the confession refers specifically to the defendant. This is true even when the State does not blatantly link the defendant to the deleted name, as it did in this case by asking whether Gray was arrested on the basis of information in Bell's confession as soon as the officer had finished reading the redacted statement. Consider a

REPORT AND
RECOMMENDATION - 10

> simplified but typical example, a confession that reads "I, Bob Smith, along with Sam Jones, robbed the bank." To replace the words "Sam Jones" with an obvious blank will not likely fool anyone. A juror somewhat familiar with criminal law would know immediately that the blank, in the phrase "I, Bob Smith, along with , robbed the bank," refers to defendant Jones. A juror who does not know the law and who therefore wonders to whom the blank might refer need only lift his eyes to Jones, sitting at counsel table, to find what will seem the obvious answer, at least if the juror hears the judge's instruction not to consider the confession as evidence against Jones, for that instruction will provide an obvious reason for the blank. A more sophisticated juror, wondering if the blank refers to someone else, might also wonder how, if it did, the prosecutor could argue the confession is reliable, for the prosecutor, after all, has been arguing that Jones, not someone else, helped Smith commit the crime.

Gray, 523 U.S. at 193.  The Court then cited to an example where a plural pronoun could be used in place of defendants' name. Gray, 523 U.S. at 196.

This is the last word from the Supreme Court on the subject.

The Washington State Court of Appeals addressed this ground for relief in its decision denying Mr. Babbs Personal Restraint Petition (ECF No. 10, Exhibit 17).  The court stated:

> Second, Babbs argues that the trial court violated *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), when it admitted his co-defendant's statements with the redaction of "other guy" for Babbs' name. However, the use of a neutral term, such as "other guy," satisfies the requirements of *Bruton. United States v. Logan*, 210 F.3d 820, 821-22 (8th Cir.) *cert. denied,* 531 U.S. 1053 (2000) ("another individual"); *United States v. Verduzco-Martinez,* 186 F.3d 1208, 1213-14 (10th Cir. 1999) ("another person").

The Washington state court ruling is not entirely correct.  Although some circuit courts have endorsed the use of neutral pronouns, the United States Supreme Court has not yet addressed the issue.  While the dicta from Gray that is cited above can be interpreted as disfavoring the use of a singular pronoun when it appears to point or lead the jury to the defendant, the Supreme Court has not clearly ruled on this issue. Thus, this court disagrees with the Washington Court of Appeals to the extent that the Washington Court of Appeals relies on Circuit Court decisions, rather than a clear Supreme Court holding on this issue.

REPORT AND
RECOMMENDATION - 11

Nevertheless, in the opinion of this court, Petitioner is still not entitled to relief. Precisely because the Supreme Court has not determined this issue as yet, the petition must be denied.

The standard of review imposed by 28 U.S.C. §2254(d) is deferential to the state proceedings to prevent relitigation of claims already rejected in state court. (ECF No. 9, pages 9 to 13). As respondent notes:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

(ECF No. 9, page 11 quoting, Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

In Richardson, the Supreme Court left open the possibility that a co-defendant's name could be replaced by a neutral pronoun. 481 U.S. 200 (1987). The Court in Gray, also gave an example, approving the use of a plural pronoun to replace the names of co-defendants. 523 U.S. at 196.

The Supreme Court has not addressed the use of a singular pronoun to replace the name of a co-defendant in a statement where only one co-defendant is being tried in a joint trial. Thus, the decision of the Washington State Court of Appeals did not violate clearly established law as determined by the Supreme Court, and as defined in 28 U.S.C. §2254 (d). Therefore, the court recommends that the petition be DENIED.

## **CERTIFICATE OF APPEALABILITY**

A petitioner seeking relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is entitled to a certificate of appealability with respect to the second ground for relief in this petition. Although this court has concluded that the use of a pronoun does not violate any clearly established constitutional right, this is a close question and one that deserves further consideration. It is not for this court to establish new precedent and the Supreme Court precedent that precedes us is not sufficiently clear to require the granting of petitioner's writ. Perhaps a higher court can provide further clarity.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of de novo review by the District Court Judge. See 28 U.S.C. 636 (b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on July 15, 2011 as noted in the caption.

Dated this 15th day of June, 2011.

J. Richard Creatura
United States Magistrate Judge